This case presents a most unusual situation. Mrs. Krech, in her lifetime, being the owner of the premises in question, subject to an estate by the curtesy in Clement Sees, surviving husband of Mary Sees, deceased, a daughter of Mrs. Krech, met the defendants at their residence in the city of Bayonne, on May 9th, 1921, and without a contract, executed a deed, in which the consideration named was "one dollar and other valuable considerations." There was also executed to her by the defendants a bond and mortgage, in the sum of $10,000, payable November 9th, 1921. Not one dollar of consideration was otherwise paid. It seems that at the time the deed was signed the defendants were not in funds to pay the purchase price, and they thereafter applied to a building and loan association for a mortgage of $7,000 on the property. It was then discovered that this estate by the curtesy was outstanding. When these instruments were made Mrs. Krech was not represented by counsel. Mr. Ryan, of the New Jersey bar, *Page 122 
represented the defendants, and attended to the drawing of the deed, bond and mortgage. Mr. Ryan recorded the deed on the date of its execution, and retained the bond and mortgage in his possession for about two months, when he handed the same to Mrs. Krech at her request. He says that she asked for the bond and mortgage in order to submit them to a friend in New York, and that afterwards she told him that this friend said that she still owned the place. Mrs. Krech returned the bond and mortgage to Mrs. Bely about two months before the death of Mrs. Krech (which occurred on October 31st, 1921), and Mrs. Bely then delivered them to Mr. Ryan who held the same until the trial of this case, when the defendants produced them in court in answer to asubpoena duces tecum. During all the time, after the recording of the deed down to the present time, this mortgage has not been recorded. In such a situation Mrs. Krech was absolutely unprotected. The defendants might have sold to an innocent purchaser, mortgaged the premises, or other encumbrances might have been placed on the property by the defendants.
After the death of Mrs. Krech and the probate of her will, the defendants and their counsel knew that the complainant was the executrix under the will of Mrs. Krech, yet they never disclosed to her the existence of the bond and mortgage until they put in their answer in this suit; and she never saw the bond and mortgage until they produced them in court at the hearing. What their purpose was in all this is difficult to comprehend; nor does the uncertain and conflicting testimony of the defendants afford any aid in its ascertainment. Mrs. Krech is dead, and therefore cannot cast any light on the transaction. The executrix knew nothing about it, and therefore the only evidence in the case is that of the defendants and their solicitor, Mr. Ryan. The court is, therefore, at a loss to definitely determine the nature of the transaction. The most natural inference to draw is that both deed and bond and mortgage were to be left in escrow until the title was passed, which would result in the consideration being paid in cash. But why this? The simple and ordinary method would have been to prepare a contract fixing *Page 123 
the terms. No sane person in the exercise of ordinary common sense, would give a deed of property and allow it to be recorded, without payment of a dollar on account, and accept back a bond and mortgage for the whole purchase price and keep the mortgage off record.
Another view that might be taken is that the execution of the deed and bond and mortgage was intended to take the form of a contract. Yet this view cannot be adopted with any degree of certainty. But this fact is reasonably certain — that Mrs. Krech did not comprehend the nature of her acts and the risks she ran, and they were not explained to her. To uphold a situation thus created seems to me to be unconscionable.
Another thought occurs: Why did the mortgagors and their counsel retain the bond and mortgage? What was the intent of the parties when Mrs. Krech returned them to Mrs. Bely and she retained them? Mrs. Krech, apparently, did not know that the deed was recorded. Did the parties then and there consider the whole thing at an end? The only testimony in the case upon the subject comes from the lips of interested witnesses who speak with the knowledge that, death having sealed the lips of the only other person who could be a witness to the transaction, they could speak without fear of contradiction. Mrs. Bely says that when the bond and mortgage were returned to her, her husband placed them in the safe, and she says that two or three days before the old lady died she handed the papers to Mr. Ryan, "because we were ready to settle it with the old lady, so I wanted all the papers included together." She said, further, that they had $3,000 in cash, and that Mr. Cruden had $7,000 in hand — that he had the check for $7,000 from the building loan. This, of course, is untrue, because the application for the loan fell through because of the discovery of the estate by the curtesy.
All of these difficulties could have been obviated had the transaction been carried out in the ordinary form. If it had assumed the form of a contract, fair in all of its parts, there would be no difficulty, even though Mrs. Krech did not have the advice of counsel. But when it assumed a form which *Page 124 
put it into the power of the defendants to strip this old lady of her property without the slightest compensation, it, to my mind, was clearly a transaction which demanded that she be properly advised, and its seems to me that the failure to be so advised stamps the transaction as not only unconscionable, but, at least, a constructive fraud upon the rights of Mrs. Krech.
But it may be that friendship between the parties accounted for her trusting the Belys. Mr. Bely was acquainted with Mrs. Krech and knew Mr. Sees, and probably she trusted the Belys to see that the transaction assumed the proper form.
The complainant prays that the deed may be declared null and void, or, in the alternative, that the $10,000 purchase price be declared a lien on the lands. The prayer in the alternative of course cannot be allowed because of this outstanding estate by the curtesy.
The defendants, in their counter-claim, pray, in substance, that they be allowed an abatement in the purchase price between the value of a fee-simple and a fee subject to the estate by the curtesy. Here, again, if Mrs. Krech had had the benefit of advice of counsel, she would have known before she signed a contract, the nature of her holding. The tenant in curtesy was not in possession — Mrs. Krech was. If her counsel discovered that there was such an estate outstanding, the contract either would not have been entered into, or some adjustment would have been made touching the estate by the curtesy.
I am satisfied that the Belys knew of the facts which in law, created the estate by the curtesy, but that neither they nor Mrs. Krech were aware that, in law, there was an outstanding estate by the curtesy.
I will advise a decree that the counter-claim be dismissed, and that the defendants convey the premises to the complainant, upon the payment of such moneys as may be found due to them upon an accounting. *Page 125